James Henry GELINAS, Appellant

v.

The STATE of Texas.

No. PD–1522–11.

Court of Criminal Appeals of Texas.

May 15, 2013.

---

■■■■■■■■■■■■■■■■■

Douglas K. Fletcher, Asst. Dist. Atty., El Paso, for Appellant.

Mario A. Gonzalez, El Paso, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

KEASLER, J., announced the judgment of the Court and delivered an opinion, in which KELLER, P.J., HERVEY, and ALCALA, JJ., joined.

The State asks us to overrule *Hutch v. State*[1] upon which the lower court relied in finding that Gelinas suffered egregious harm from an erroneous jury instruction. Upon review, we believe *Hutch* was flawed and produces unjust results, and we hereby disavow it. We find the contested jury instruction in the instant case was erroneous, but egregious harm did not result. Accordingly, we reverse the court of appeals' judgment.

## I. Background

### A. Trial

Gelinas was charged with the offense of driving while intoxicated following a roadside stop conducted by Department of Public Safety Trooper Diego Marquez. At trial, Trooper Marquez testified that he stopped Gelinas because he believed Gelinas failed to signal out of a private parking lot and that the light illuminating Gelinas's license plate was not white, as required by law. Marquez conceded, however, that the former ground for the stop proved insupportable because the Transportation Code does not require drivers to signal when turning out of private lots. As a result, the sole ground for the stop became Gelinas's alleged non-compliance with Transportation Code section 547.322(f), mandating that lights illuminating license plates be white.[2] Trooper Marquez testified that the light illuminating the license plate was not white, though he had difficulty recalling the actual color of the light. The State also offered video from Trooper Marquez's in-car police camera, though the testimony at trial suggests that the video fails to conclusively establish the color of the license plate light. According to Marquez, Gelinas exhibited a number of signs of intoxication after being pulled over and performed poorly on the standardized field sobriety tests. Based on his observations, Trooper Marquez concluded that Gelinas was intoxicated.

In addition to arguing that he was not intoxicated, Gelinas argued at trial that the light illuminating his license plate was, in fact, white. In support of his position, Gelinas referred to Trooper Marquez's in-car camera video as proof that the light was white. Additionally, Gelinas offered the testimony of his wife, who stated that the light was white and that the car had passed numerous state inspections. A photograph of the license plate taken by Gelinas's wife sometime after the incident was also offered at trial, though, like as with the video, it appears from the testimony at trial that the photograph was

---

1. *Hutch v. State,* 922 S.W.2d 166 (Tex.Crim. App.1996) (plurality opinion).

2. Tex. Transp. Code § 547.322(f) ("A taillamp or a separate lamp shall be constructed and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear.")

somewhat inconclusive as to the color of the license plate light.

Because the issue regarding the color of the light was contested, the trial judge included an instruction pursuant to Texas Code of Criminal Procedure article 38.23(a)[3] in the jury charge, which stated:

You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts which, taken together with rational inferences from those facts, lead him to conclude that a person detained actually is, has been, or soon will be engaged in criminal activity. Now, bearing in mind this instruction, if you find from the evidence that on the occasion in question the Defendant, James Henry Gelinas, was driving his vehicle on a public road immediately preceding his stop and detention by the officer and you find from the evidence that his vehicle failed to comply with the Texas Transportation Code Provision, which requires a white light to illuminate the vehicle's license plate or you have a reasonable doubt thereof, then such stopping of the accused would be illegal and, if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard this testimony of Trooper Marquez relative to his stopping the defendant and his conclusions drawn as a result thereof, and you will not consider such evidence for any purpose whatsoever.

The instruction was clearly erroneous in that it stated the exact opposite of what the law provides. In truth, if the jury found that Gelinas was driving on a public road and failed to comply with the law requiring a white light, the stop would have been legal, not illegal, and thus the jury could have properly considered the testimony and conclusions of Trooper Marquez.

Gelinas was found guilty of driving while intoxicated and was sentenced to 180 days confinement probated for fifteen months and fined $1000.

## B. Appeal

■ On appeal, Gelinas asserted, among other things, that he suffered egregious harm as a result of the charge error.[4] Because Gelinas did not object to the erroneous jury instructions at trial, the court of appeals conducted an *Almanza*[5] harm analysis to determine whether the error resulted in egregious harm.[6] Under *Almanza*, courts evaluate harm by taking into account (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information con-

---

**3.** Tex. Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the state of Texas, or of the Constitution or law of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.")

**4.** *Gelinas v. State*, 2011 WL 2420858, *3, 2011 Tex.App. LEXIS 4524, *7 (Tex.App.–El Paso June 15, 2011).

**5.** *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985) (op. on reh'g)

**6.** *Gelinas*, 2011 WL 2420858, at *3–4, 2011 Tex.App. LEXIS 4524 at *9–10.

tained in the record as a whole.[7] In its analysis, the court of appeals noted the similarities between the facts of the instant case and those in our *Hutch v. State* plurality opinion, which essentially stands for the proposition that when a defendant fails to object to a misstatement of the law relevant to a contested issue in a jury charge's application paragraph, the fact that jury arguments properly explained the law cannot render the resulting error harmless. The court of appeals opted to follow our reasoning in *Hutch,* offering little more than an account of our analysis in *Hutch* and a blanket conclusion of egregious harm.[8] That court reversed and remanded the case accordingly.[9] Upon review, we conclude that *Hutch* lacks the persuasive value to which the court of appeals attributed it.

## II. Analysis

### A. *Hutch*

In *Hutch,* there was a similarly erroneous article 38.23(a) jury instruction containing a misstatement of the law.[10] Hutch's arrest was based on the discovery of drugs in a car which was allegedly pulled over because the driver and the passenger, Hutch, were not wearing seatbelts.[11] Hutch claimed that he and the driver had been wearing their seatbelts and thus the stop was illegal and all subsequently obtained evidence inadmissible.[12] Because the issue was contested, the trial judge included an article 38.23 instruction.[13] The instruction, however, erroneously stated the exact opposite of what the law provided. It instructed the jury that if they found that the driver of the car and Hutch had not been wearing their seatbelts, the stop was illegal, and they should disregard the officer's testimony and conclusions.[14] In fact, in this scenario, the stop would have been legal and the jury could have considered the testimony and conclusions of the officer.[15]

In *Hutch,* we concluded that, with regard to the first *Almanza* factor addressing the entire charge, the error was "unquestionably wrong" and "was 180 degrees opposite of what it should have been."[16] We held this factor weighed in favor of finding egregious harm because the error occurred in the application paragraph of the jury charge—the portion which authorizes the jury to act—and also on the appellate presumption that the jury understood and followed the jury charge absent evidence to the contrary.[17]

*Hutch* continued its analysis by addressing the second *Almanza* factor, calling for consideration of the state of the evidence. We held that the issue was a contested

7. *Almanza,* 686 S.W.2d at 171.

8. *Gelinas,* 2011 WL 2420858, at *4, 2011 Tex. App. LEXIS 4524 at *10 (citing *Hutch,* 922 S.W.2d at 170).

9. *Id.,* 2011 WL 2420858 at *5, 2011 Tex.App. LEXIS 4524 at *13–14.

10. *Hutch,* 922 S.W.2d at 169–70.

11. *Id.* at 169.

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.* at 170.

16. *Id.* at 172 (citing *Hutch v. State,* 881 S.W.2d 92, 94 & 96 (Tex.App.–Houston [1st Dist.] 1994)).

17. *Hutch,* 922 S.W.2d at 172–73 (citing *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim.App. 1987) (op. on reh'g); *Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983); *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim. App.1987)).

one, and noted that no instruction would have been required otherwise.[18]

As for the third *Almanza* factor—arguments of counsel—we originally concluded that the arguments of counsel, though correct, were insufficient to cure the resulting error.[19] We based this conclusion, in part, on the fact that it has long been said that "jury arguments are not evidence and the jury may not consider them as such" and on the Supreme Court's holding that "arguments of counsel cannot substitute for instructions by the court" in addition to language from one of our own prior opinions stating that "jury argument is not a substitute for a proper jury charge."[20] In addition, we cited case law suggesting that a jury argument alone is never controlling in an analysis under *Almanza.*[21]

Finally, our *Hutch* opinion made no mention of any other relevant considerations that might fit within the broad "catch-all" category that constitutes the fourth *Almanza* factor.

Because it is flawed and produces unjust results, we decline to apply *Hutch's* reasoning to a jury charge error like that presented in this case. First, *Hutch's Almanza* analysis did not attribute the appropriate weight to the various factors in light of the facts. As for its analysis of the first *Almanza* factor—the jury charge in general—we do not agree with the great weight the *Hutch* plurality placed on this factor, weighing in favor of finding egregious harm, simply because of the error's location in the application paragraph. Just as Presiding Judge Onion stated in his concurring and dissenting opinion in

*Almanza,* we, too, question the wisdom of reversing upon "finding a single defect in the exalted 'application paragraph' ... without consideration of the charge as a whole, or considering whether the jury was in any way misled."[22]

Further, the plurality overlooked the possibility that it is the very clarity of the error that may have mitigated any resulting harm. The erroneous instruction in the application paragraph in *Hutch* immediately followed a correct statement of the law in the abstract portion of the charge. The juxtaposition of the two almost certainly alerted the jury to the fact that the inconsistency was the result of a typographical error. Though we discuss this in greater detail in our analysis of *Hutch's* conclusion regarding the third *Almanza* factor, it is relevant here that the jury arguments in *Hutch* involved correct recitations of the law, which informed jurors of the correct law and thus likely indicated to the jury that the charge contained a simple mistake. Common sense would also indicate to most jurors that a police officer cannot legally stop and investigate a law-abiding citizen without cause.

Similarly, while we agree that the issue in question was a contested one, we believe our original conclusion that the second *Almanza* factor weighed in favor of egregious harm on this basis alone was overly simplistic. Resolving this factor in such a manner essentially means that if a trial judge grants a request for an article 38.23 instruction that happens to contain even the slightest error, an appellant is already

---

18. *Hutch,* 922 S.W.2d at 173.

19. *Id.* at 174.

20. *Id.* (citing *Taylor v. Kentucky,* 436 U.S. 478, 488–89, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Arline v. State,* 721 S.W.2d 348, 353 n. 8 (Tex.Crim.App.1986)).

21. *Id.* (citing *Ruiz v. State,* 753 S.W.2d 681, 686 (Tex.Crim.App.1988)).

22. *Almanza,* 686 S.W.2d at 177 (Onion, J., concurring and dissenting).

one quarter of the way to establishing egregious harm. In erroneous article 38.23 instruction cases, this factor should be afforded less weight because it undermines the flexibility required of a factor test applied on a case-by-case basis and elevates an article 38.23 instruction to a special status subject to a modified factor test. Thus, we are inclined to limit the weight of this factor in the egregious-harm evaluation.

As for the third *Almanza* factor, the *Hutch* opinion's conclusion that the arguments of counsel, though correct, were insufficient to cure the resulting error relied upon factually distinguishable case law, *Taylor v. Kentucky* and *Arline v. State*, in support of its conclusion.[23] In both *Taylor* and *Arline*, the facts were significantly different than those in *Hutch*. There, the trial courts refused to give any version of the requested instructions.[24] As a result, the relevant law was entirely absent from the jury charges. For this reason, we do not believe that the holdings in *Taylor* and *Arline* deeming jury arguments insufficient substitutes for jury instructions apply in cases like *Hutch* or the present case, where arguments are not acting as substitutes for the instructions, but merely constitute a correct version of the law incorrectly reflected in the jury charge. In such cases, the jury is not deprived of all relevant law, but is simply faced with an obviously erroneous recitation of that law, and correct arguments may well serve to alert jurors to the presence and correctness of such errors. Our belief that the arguments of counsel can be relevant to harm is supported by the fact that the entirety of the third factor of *Almanza*

focuses on arguments of counsel. If such arguments were not relevant to harm, why would this be the case?

Second, and perhaps more importantly, the *Hutch* opinion resulted in a windfall for Hutch and creates similar potential windfalls for other defendants in factually similar circumstances. A defendant may now remain silent where a jury charge is incorrect, hoping for an acquittal, and then, if a jury finds him guilty, raise the issue on appeal with the hope of obtaining a new trial. The State, however, has no such opportunity given its limited right of appeal.[25] Not only is the result unfair, but it also encourages defendants to remain silent with regard to errors in jury instructions and rewards the failure to correct charge errors. Both fairness and judicial economy favor doing away with such a holding.

Choosing to decline to apply *Hutch* does not mean that egregious harm did not occur in Gelinas's case, however. The appropriate inquiry is a fact specific one which must be performed on a case-by-case basis.

## B. Gelinas's Case

With regard to *Almanza's* first factor, addressing the charge in its entirety, clear error exists in the application paragraph of the charge to the jury because the instruction misstated the law. The location of the error in the application paragraph is not as significant as we once believed. The proper recitations of the law in the abstract paragraph and the arguments of counsel, discussed in greater detail below, along with the common sense of the jurors, likely minimized the impact of this error. In

**23.** *Hutch*, 922 S.W.2d at 174 (citing *Taylor v. Kentucky*, 436 U.S. 478, 488–89, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Arline v. State*, 721 S.W.2d 348, 353 n. 8 (Tex.Crim.App. 1986)).

**24.** *Taylor*, 436 U.S. at 480–81, 98 S.Ct. 1930; *Arline*, 721 S.W.2d at 353 n. 8.

**25.** *See* Tex.Code Crim. Proc. art. 44.01.

fact, the language preceding the incorrectly worded portion of the jury charge clearly states that it should be read "bearing in mind [the foregoing] instruction," referring to the abstract portion. This informed the jury that they were to apply the law given in the abstract, which constituted a correct statement of the law. Ultimately, although this factor weighs in favor of a finding of egregious harm, we do not place such great weight on it as the court of appeals was inclined to do.

With regard to the second factor, it is obvious that the issue here was a contested one. The State does not contest this. As a result, this, too, weighs in favor of a finding of egregious harm. However, as discussed above, in the context of an article 38.23 instruction, this factor should be assigned less weight given that the presence of an instruction in the first instance means that the issue was a contested one.

Regarding the arguments of counsel—*Almanza's* third factor—both parties mentioned the law regarding the legality of the stop in their arguments to the jury. In the first portion of the State's closing argument, the prosecutor referred the jury to the incorrect portion of the jury charge and went so far as to read part of it, though not enough of it to constitute an incorrect statement of the law as he did not reach the portion regarding whether the stop was legal or illegal. Nevertheless, the State went on to correctly address the issue, explaining that the stop was legal so long as the light on Gelinas's license plate was not white. In the final portion of the State's closing argument, the prosecutor again correctly stated the law with regard to the stop's legality, explaining that if the light was red, that would constitute a violation of the Transportation Code, and Trooper Marquez could have validly stopped Gelinas.

Defense counsel also addressed the issue of the legality of the stop. In his closing argument, counsel referred to the incorrect jury charge and read the incorrect portion in its entirety. Like the State, however, he proceeded to correctly set out the law regarding the legality of the stop and even went so far as to tell the jury that if they found that the light was white, they could not consider anything else that occurred after the stop.

Thus, though there were some misstatements of the law during jury arguments, both parties also argued the correct law very clearly to the jury. Given that we have determined that jury arguments bear significantly on an *Almanza* analysis, we believe the third factor weighs significantly in favor of a finding of no egregious harm.

As for the fourth *Almanza* factor, which accounts for any other relevant information contained in the record, we note the absence in the record of a note from the jury during deliberations expressing confusion as to the contradictory language regarding the 38.23 instruction. This suggests that the jury was not confused by the typographical error in the jury charge or the misstatements during the arguments of counsel. In light of the obviousness of those errors, the common sense of the jurors, the correct portion of the jury charge, and the correct statements of law in both parties' closing arguments, we believe it probable that the jury resolved the issue in accordance with the law. This factor, too, weighs in favor of finding no egregious harm.

 Ultimately, we believe that the third and fourth factors weighing in favor of finding no egregious harm outweigh the first and second factors weighing in favor of finding egregious harm. Our conclusion is supported by the fact that the Gelinas jury was unlikely to have been misled given the fact that common sense, the correct

abstract paragraph, and correct jury arguments most likely alerted the jury to the error and allowed them to recognize the mistake and properly apply the law as correctly stated in the preceding sentence. We conclude that no egregious harm resulted from the erroneous instruction in the jury charge. We limit our holding today to the facts of this case and reiterate our assertion that the *Almanza* analysis is a fact specific one which should be done on a case-by-case basis.

## III. CONCLUSION

We find our opinion in *Hutch* was flawed and produces unjust results, and we hereby disavow it. After conducting an *Almanza* analysis in the instant case, we find the erroneous article 38.23 instruction did not egregiously harm Gelinas. Accordingly, we reverse the court of appeals' judgment and remand the case to the court of appeals to address Gelinas's remaining points of error.

KELLER, P.J., filed a concurring opinion.

COCHRAN, J., filed a concurring opinion.

MEYERS, J., filed a dissenting opinion.

PRICE, J., filed a dissenting opinion.

JOHNSON, J., filed a dissenting opinion.

WOMACK, J., concurred.

KELLER, P.J., filed a concurring opinion.

I join the Court's opinion. To its cogent refutation of the reasoning in *Hutch*,[1] I would add the point raised in my dissent in that case: the error in the application part of the jury instructions was to the defendant's benefit. The application portion of the instructions[2] in *Hutch* essentially told the jury (incorrectly and to Hutch's benefit) to *disregard* legally obtained evidence. It did not tell the jury what to do if the evidence was illegally obtained.[3] But the abstract portion of the instructions did. It told the jury that illegally obtained evidence was inadmissible, explained to the jury that a police officer could stop someone only if criminal activity was rationally suspected, and set forth the failure to wear seatbelts as the suspected crime that would be the basis of the stop.[4] Considered as a whole, the instructions essentially told the jury that it had to disregard the evidence if it was obtained illegally *or* if it was obtained legally. "[T]he only way the jury could have convicted was by disregarding the erroneous [application] instruction and acting in accord with the rest of the jury charge and the jury arguments."[5]

Similarly, the application portion of the instructions in the present case told the jury (incorrectly and to appellant's benefit) to *disregard* the evidence if the jury determined that it was obtained legally. The application portion of the instructions did not tell the jury what to do if it was illegally obtained. But the abstract portion of the instructions told the jury that illegally obtained evidence was inadmissible, explained to the jury that a police officer could stop someone only if criminal activity was rationally suspected, and set

1. *Hutch v. State*, 922 S.W.2d 166 (Tex.Crim. App.1996).

2. *See* TEX CODE CRIM. PROC. art. 38.23(a) (second paragraph).

3. *Hutch*, 922 S.W.2d at 174–75 (Keller, J., dissenting).

4. *See id.* at 169 (Court's op.).

5. *See id.* at 174–75 (Keller, J., dissenting).

forth a violation of the Transportation Code as the suspected crime that would be the basis of the stop. As in *Hutch*, the application portion of the instructions essentially told the jury that the evidence could not be considered if it was legally obtained, and the abstract portion of the instructions told the jury that the evidence could not be considered if it was illegally obtained. The instructions never told the jury that it should consider illegally obtained evidence. The only rational view of the situation is that the jury, in convicting appellant, disregarded the erroneous application portion of the instructions.

## OPINION

COCHRAN, J., filed a concurring opinion.

Let's face it. This jury (1) did not read the Article 38.23 jury instructions; (2) did read the instructions, but did not understand what they really said, and therefore ignored them; or (3) did read the instructions, knew that they were wrong, and therefore ignored them. The third option is the least likely; after all, neither the parties nor the trial judge knew that the instructions were wrong at the time that they were written or read. The most likely option is the first, which simply proves the old adage of "garbage in, garbage out." These instructions are 100% legalese. They make no sense. Trial judges should not be giving instructions like this. This is not a case in which the reviewing court should apply the usual presumption that the jury understood and applied the court's charge in the way it was written.[1] Here, we know that the jury, composed of normal people, was unlikely to have understood the jury charge as it was written

because not even the lawyers and trial judge, attuned though they may be to legalese, understood what the instructions said.

The trial judge should "chunk" information and give it to the jury in a short, digestible pieces as shown in the Texas Criminal Pattern Jury Charges volumes published by the Texas State Bar.[2] Although the Pattern Jury Charges do not yet cover special instructions under Article 38.23, the general instructions provide a guide along the following lines:

No evidence obtained by an officer as the result of an unlawful stop and detention is admissible against the defendant. An officer is permitted to make a temporary investigative detention of a motorist if that officer has reasonable suspicion to believe that the motorist has violated a traffic law. One such traffic law requires a vehicle to have a white light that illuminates the vehicle's license plate.

Before you may consider whether the evidence supports the defendant's guilt of the offense of driving while intoxicated, you must first determine whether the State has proven, beyond a reasonable doubt, that

(1) Trooper Diego Marquez reasonably believed that

(2) the defendant, James Henry Gelinas, was driving a vehicle that did not have a white light that illuminated his vehicle's license plate.

If you find both (1) and (2) beyond a reasonable doubt, then you will next consider whether the State's evidence has proven the elements of the offense of driving while intoxicated.

---

1. *See Miles v. State*, 204 S.W.3d 822, 828 (Tex.Crim.App.2006) ("[I]n the absence of evidence to the contrary, we will assume that the jury followed its written instructions.").

2. *See* Texas State Bar, Texas Criminal Pattern Jury Charges, vols. 1–4 (2009–2012).

If you do not find both (1) and (2) beyond a reasonable doubt, then you will not consider any evidence that was obtained by Trooper Diego Marquez after making an unlawful stop. In this case, you must find the defendant "not guilty" if you find that Trooper Marquez made an unlawful stop.

This instruction makes clear that it is the officer's reasonable belief about the violation that matters.[3] It also forces everyone to focus on the historical fact that establishes the violation.[4] And its format also would make it obvious to the trial judge and attorneys if the instruction were wrong.

In this case, the primary contested issue was the color of the license plate light and whether Trooper Marquez was credible concerning its color. Both the defense attorney and prosecutor focused on that evidence and that issue. Regardless of the nonsensical jury instruction, the parties made it abundantly clear that if the jury did not believe Trooper Marquez about the license plate color, he should not have stopped and detained Mr. Gelinas. And if he should not have stopped and detained Mr. Gelinas, the jury must set aside all of the evidence Trooper Marquez obtained as a result of that stop. And, if that was the case, then the jury should have found Mr. Gelinas not guilty because there was no other evidence to support his guilt of driving while intoxicated.

I do not think that it is necessary to "disavow" *Hutch v. State*[5] because that was only a plurality opinion and therefore is not binding precedent. And I think that *Hutch* properly set out the four *Almanza* "egregious error" factors, although reasonable minds could (and, in *Hutch*, did) disagree on precisely how they are to be applied. I agree with Presiding Judge Keller's dissent in *Hutch* that in both that case and the present one "the jury charge authorized acquittal on the wrong basis, but did not authorize conviction on the wrong basis."[6] That is, the jury charge stated, in essence: "If the defendant was breaking the law at the time the officer stopped him, then … the stop was illegal." Well, of course that is nonsense, but it is nonsense that the jury would have clearly understood to be such. I agree with Judge Keasler that, counterintuitive as it may seem, the very obviousness of the error makes it less harmful—certainly less harmful than the converse instruction: "If the defendant was not breaking the law at the time the officer stopped him, then … the stop was legal."[7]

I conclude that the error in this jury charge did not cause appellant egregious

3. *See Madden v. State*, 242 S.W.3d 504, 516 & n. 31 (Tex.Crim.App.2007); *see also* 43 GEORGE E. DIX & JOHN M. SCHMOLESKY, CRIMINAL PRACTICE AND PROCEDURE, § 44:46 at 1055–56 (3d ed.2011) (discussing disputed fact issues under art. 38.23 and setting out examples of jury instructions on reasonable suspicion to detain a motorist).

4. *See Robinson v. State*, 377 S.W.3d 712, 718–19 (Tex.Crim.App.2012) (distinguishing between dispute over historical facts and dispute over the legal significance of historical facts; defendant not entitled to art. 38.23 jury instruction when dispute was over whether defendant was required to use his turn signal at "meeting place" of two roads, not whether

he did use his signal); *Spence v. State*, 325 S.W.3d 646, 653–54 (Tex.Crim.App.2010) (defendant was not entitled to art. 38.23 instruction on proper placement of his license plate; there was no disputed factual issue concerning where his license plate was—it was on the front dashboard; the proper placement of a license plate is a question of law, not historical fact, so judge, not jury, decides that legal issue).

5. 922 S.W.2d 166 (Tex.Crim.App.1996).

6. *Id.* at 174 (Keller, P. J., dissenting).

7. *See id.*

harm because the jury instruction was just an indecipherable lump of legal gobbledygook that no one (including the lawyers and the judge) understood or paid any attention to. But everyone did focus on the important issue: Trooper Marquez's credibility. If the jury believed that Trooper Marquez stopped appellant for a bogus reason, anything he found as a result of that bogus stop could not be used to convict appellant. And if the jury disbelieved Trooper Marquez, they would have found appellant not guilty. Because the jury did find appellant guilty, it is illogical to conclude that they might have disbelieved Trooper Marquez.

I therefore concur in the judgment of the Court.

MEYERS, J., filed a dissenting opinion.

I have always loved great theater and this case has all the makings of a Tony Award winner. On stage right we have Judge Keasler and the plurality sterilizing Charlie Baird's plurality opinion in *Hutch v. State*, 922 S.W.2d 166 (Tex.Crim.App. 1996), and in the process basically eliminating the possibility of ever getting relief under the egregious harm standard of *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1985). Entering from stage left, we have Judge Price's impassioned defense of *Almanza*. Lastly, our heroine Judge Cochran saves the day for the plurality by concluding "that the error in this jury charge did not cause appellant egregious harm because the jury instruction was just an indecipherable lump of legal gobbledygook that no one (including the lawyers and the judge) either understood or paid attention to." *See* Cochran, J., concurring

opinion at 712–13.[1] But this case is a classic example of the *Almanza* tragedy.

Instead of going to impossible lengths to disavow *Hutch*, the plurality should take the time to look at the inequality of *Almanza* and overrule it instead. The conflicting decisions of the court of appeals and the plurality in this case exhibit the conundrum created by *Almanza* in trying to determine harm vs. egregious harm. Analysis under *Almanza* has resulted in uneven rulings because the factors used to distinguish between harm and egregious harm are difficult to decipher. In addition, the rational of *Almanza* having the egregious harm standard in cases where the defendant did not object belies the truth that no attorney would ignore his ethical duty to his client and consciously fail to object to an improper jury charge. I do not know of any lawyer who would risk having an ineffective assistance of counsel ruling against him on the slim possibility that a jury charge error may eventually result in the reversal of a guilty verdict.

Appellate courts have clearly had difficulty judging how to weigh the *Almanza* factors, but the worst feature of the *Almanza* egregious harm standard is that it is so unfair to defendants, especially in light of how we treat the State in similar situations. The State does not have to show egregious harm, or even some harm—the State does not have to show harm at all because in *Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997), we bestowed the State with the hypothetically correct jury charge. In *Malik*, we overruled *Benson* and *Boozer* to relieve the State of the burden of objecting to jury charge error in sufficiency cases.[2] *Malik*

---

1. I kinda thought that this instruction would become the gold standard for egregious harm. It certainly has all the markings: 1. It was an indecipherable lump 2. It was legal gobbledygook and 3. It was not understood by (a) anyone (b) the lawyers or (c) the judge.

2. *See Benson v. State,* 661 S.W.2d 708 (Tex. Crim.App.1982) and *Boozer v. State,* 717 S.W.2d 608 (Tex.Crim.App.1984).

created the hypothetically correct jury charge so that the State does not suffer when there is an erroneous jury instruction, so why should the defendant be treated differently and be given the almost impossible task of showing egregious harm from the same error?

Instead of going to these lengths to disavow *Hutch*, it would be more equitable to do away with the enigma of *Almanza* and treat all jury charge error under the same "some harm" standard. It seems obvious that the plurality's intent all along was not to reexamine the court of appeals's analysis in this case but to simply eliminate a defendant's ability to ever obtain relief if his attorney failed to object to a defective charge. Therefore, I respectfully dissent.

PRICE, J., filed a dissenting opinion.

The court of appeals did not regard the plurality opinion in *Hutch* to be of binding precedential value,[1] but nevertheless found it to be persuasive authority and opted to follow it.[2] I also find at least aspects of the plurality opinion in *Hutch* to be persuasive, and for reasons which I elaborate upon in this opinion, I agree with the court of appeals that the appellant suffered egregious harm in this case. Therefore, I respectfully dissent.

## THE *ALMANZA* STANDARD

To the extent that *Hutch* simply reiterated basic propositions established by *Al-*

*manza v. State*,[3] deriving from its exegesis of Article 36.19 of the Texas Code of Criminal Procedure,[4] I presume that it remains intact notwithstanding the plurality's disavowal today. I think it is still safe to say, for example, as the Court has done in, *e.g.*, *Stuhler v. State*,[5] that

[j]ury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole.[6]

Relying upon this standard, with or without the glosses added by the plurality opinion in *Hutch*, and unlike the plurality today, I conclude that the jury-charge error in this case egregiously harmed the appellant.

## APPLICATION OF THE *ALMANZA* STANDARD

### The Entirety of the Jury Charge

The application paragraph with respect to the Article 38.23(a) instruction in this case,[7] we all agree, instructed the jury to

1. *Hutch v. State*, 922 S.W.2d 166 (Tex.Crim. App.1996) (plurality opinion).

2. *See Gelinas v. State*, 2011 WL 2420858, at *5, No. 08–09–00246–CR (Tex.App.–El Paso, delivered June 15, 2011) (not designated for publication) ("The State suggests that because *Hutch* is a plurality opinion, we need not follow it. That is certainly true. But because we agree with the *Hutch* majority, we choose to follow it.").

3. *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985) (opinion on reh'g).

4. Tex.Code Crim. Proc. art. 36.19.

5. 218 S.W.3d 706 (Tex.Crim.App.2007).

6. *Id.* at 719 (footnotes omitted).

7. *See* Tex.Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer ... [illegally] shall be admitted in evidence against the accused on the trial of any criminal case. In

discount Officer Marquez's testimony under exactly the opposite circumstances than the law requires. It instructed the jury that the appellant's initial stop would be "illegal," such that it must "disregard" Marquez's testimony, in the event that it should find "that his vehicle *failed* to comply with the Texas Transportation Code Provision, which requires a white light to illuminate the vehicle's license plate[.]" [8] But, of course, because a white light is exactly what the law does require, Marquez's stop of the appellant for *failing* to display a white light would have been quite legal, and in that event, the jury would not be properly instructed under Article 38.23(a) to disregard evidence stemming from the stop.

Without Marquez's testimony, and the videotape that was made from his squad car pursuant to his roadside detention of the appellant, the State's evidence in this case would not have rationally supported the appellant's conviction for driving while intoxicated. But convict him the jury did. The jurors could have reached this verdict by one of only two possible paths, consistent with the erroneous application paragraph. First, they could have 1) recognized the mistake in the jury charge and self-corrected it (reading "complied" for "failed to comply"), 2) found that the appellant's license-plate light was *not* in fact white, and then 3) convicted him based upon the evidence Marquez supplied, notwithstanding the plain (if erroneous) language of the jury instruction that they should disregard his testimony. This is the plurality's preferred hypothesis. Second, they could have 1) followed the erroneous instruction to the letter, 2) found that the appellant's license-plate light *was* in fact white (and therefore legal), and 3) for that reason convicted the appellant based upon the evidence Marquez supplied, in keeping with the literal dictates of the erroneous instruction (but contrary to what Article 38.23(a) actually requires). We have no way of knowing which path the jury took to convict the appellant.

One thing we do know for certain, however, is that pursuing the first path would have presented the jury with a difficult ethical dilemma. The record shows that the jury was duly sworn, and though the content of that oath does not appear in the record, we may safely assume it was the statutory oath to render a true verdict "according to *the law* and the evidence[.]" [9] The jurors were explicitly instructed, moreover, albeit in a boilerplate provision of the jury charge, that they "are the exclusive judges of the facts proved, of the credibility of the witnesses and weight to be given their testimony, *but the law of the case you will receive from the Court which is given you herein and you are to be governed thereby.*" There is a general presumption on appeal that jurors "have understood and followed the court's charge

---

any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.").

8. All emphasis is supplied unless otherwise indicated. As if to ameliorate its impact, the State characterizes this error in the application paragraph as merely "grammatical."

State's Brief at 10. The plurality today similarly wishes to characterize it as no more than "typographical." Plurality Opinion at 709. Of course, it is neither grammatical (the sentence is perfectly grammatical) nor what I would regard as "typographical." The error is in the concept expressed, not in the way it is expressed or how it is rendered on the page.

9. Tex.Code Crim. Proc. art. 35.22.

absent evidence to the contrary."[10] Entertaining this presumption, I would have expected that jurors who understood the application paragraph as literally composed, but who actually suspected that it was legally inaccurate, to have experienced a certain degree of angst with respect to their collective ability to follow their oath, given the unequivocal instruction to take the law (however inaccurate) from the court and be governed thereby. A jury note, perhaps? Here, there was none. That leads me to prefer the hypothesis that the jury followed the second path above, finding (as it could readily have done on the facts of this case) that the appellant's license-plate light was in fact white (such that he did *not* "fail to comply with" the Transportation Code), and to have inappropriately considered Marquez's testimony anyway (as they were required to do per the erroneous instruction) and therefore convicted him.

The plurality today obviously believes otherwise, placing great faith in the power of the abstract portion of the Article 38.23(a) instruction to alert the jury to the mistake in the application portion. But

nothing in the language of the abstract portion serves *necessarily* to signal an inaccuracy in the application paragraph. True, the abstract instruction correctly informs the jury that illegally obtained evidence is inadmissible.[11] That, in combination with the language in the application paragraph that expressly tells the jury that the Transportation Code requires a white light to illuminate the license plate, could *conceivably* have caused the jury to question the accuracy of the application paragraph's characterization of a *failure* to display a white light as a circumstance that would render the stop "illegal." Far more likely, it simply caused juror confusion and consternation. In any event, even if it did alert the jury to the mistake, that would only have entangled the jury in the ethical dilemma I have described above.[12] It would not have clearly instructed the jury how to resolve it.

### The Evidence

During voir dire, counsel for the appellant made it clear that the credibility of the arresting police officer would be an issue in the case. He revisited that theme

---

**10.** *Hutch, supra,* at 172.

**11.** Well, at least the written instruction does. The court reporter's record reflects that what the trial court read aloud to the jury was that no evidence obtained "as a result of an [sic] *lawful* stop" would be admissible against the appellant, though the written instruction said "unlawful." Thus, as it was read aloud, the abstract Article 38.23(a) instruction was fully consistent with the erroneous application paragraph and would not have served to alert the jury to the problem. The State has not shown that this represents an incorrect transcription, and so we have no occasion to doubt it.

**12.** The ethical dilemma confronting the jury in this case is reminiscent of that in *Penry v. Johnson,* 532 U.S. 782, at 798–800, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). There, the United States Supreme Court, like this Court in *Hutch,* invoked the appellate presumption

"that jurors follow their instructions." *Id.* at 799, 121 S.Ct. 1910. The Supreme Court ultimately found the presumption unhelpful in *Penry,* however, because the instructions at issue were internally contradictory, and "it would have been both logically and ethically impossible for a juror to follow both sets of instructions." *Id.* at 799–800, 121 S.Ct. 1910. Here, similarly, the best that can be said about the Article 38.23(a) jury instruction is that it was *hopelessly self-contradictory,* injecting "an element of capriciousness" into the case with respect to the most pivotal issue at the guilt phase of trial. *Id.* at 800, 121 S.Ct. 1910. Under these circumstances, it is difficult to imagine how the error could *not* have "affect[ed] the very basis of the case, deprive[d] the defendant of a valuable right, or vitally affect[ed] a defensive theory." *Stuhler, supra.*

during his opening statement at the beginning of the guilt phase of trial. In his direct testimony, Marquez maintained that appellant's license-plate light was "the wrong color." He acknowledged on cross-examination that he failed to note this fact in his offense report. He testified that the license-plate light was red rather than white, and he did not remember his earlier testimony from an administrative license revocation hearing at which he apparently could not say what color the light actually was—only that it was "somewhat of a color other than white" but nevertheless "faint-colored." He even acknowledged at one point on cross-examination that he simply "couldn't tell if it was white." The appellant's wife later testified, however, that the light illuminating the license plate was white, not red, and that the car had passed its official state inspection every year for the four or five years that they had owned the truck.[13] While the appellant also contested the efficacy of the State's evidence to show that he was intoxicated, the most vigorously contested and clearly dispositive issue in the case was whether Marquez was telling the truth to say that the license-plate light was "the wrong color."

A properly instructed jury might well have resolved the Article 38.23(a) issue in the appellant's favor and, discounting Marquez's testimony, acquitted him.[14]

### The Arguments of the Parties

At every relevant point during their opening statements, as well as in their final arguments to the jury, lawyers for the parties argued the facts with respect to the issue of the color of the license-plate light as if the jury were properly instructed. For all the jurors could tell from the debate of the parties respecting Marquez's credibility, the appellant preferred them to find that the light was white, while the State urged them to find that it was not. This is another factor that contributes to the plurality's impression that the jury must necessarily have suspected that the Article 38.23(a) application paragraph was flawed—indeed, so obviously flawed that the jury must have known what the trial court had *meant* to say.

But when it came to their iterations of the *law*, the parties unequivocally endorsed the Article 38.23(a) jury instruction

13. The plurality today declares that "the testimony at trial suggests that the video fails to conclusively establish the color of the license plate light." Plurality Opinion at 704. By contrast, the court of appeals observed unequivocally that "[t]he videotape of the traffic stop depicts a white light illuminating the license plate." *Gelinas, supra,* at 2011 WL 2420858, at *2. We do not presently have the video before us in the record. In any event, from the court of appeals's observation it seems at least evident that the jury could readily have found the license-plate light to have been white.

14. The plurality asserts that we should not give undue weight to the fact that the issue was contested, given that there must be a contested fact issue before an Article 38.23(a) instruction is required to be submitted to the jury in the first place. Plurality Opinion at

707 & 710. Presumably the plurality is worried that, otherwise, every erroneous Article 38.23(a) instruction will be deemed egregiously harmful. *Id.* at 8. But the fact that a certain class of jury-charge errors will thus, almost by definition, have at least one *Almanza* factor that tends to favor a finding of egregious harm does not counsel against giving that factor the same weight as it would have in the context of any *other* kind of jury-charge error. In any event, it will not be every case in which the evidence supporting the Article 38.23(a) instruction will be as solid as it is in this case. An Article 38.23(a) instruction must be given any time the evidence supports it, however minimally. *Robinson v. State,* 377 S.W.3d 712, 719 (Tex.Crim.App. 2012). That does not mean that every Article 38.23(a) jury-instruction error causes egregious harm.

as it literally, but mistakenly, read.[15] At the beginning of trial, describing how they could expect the trial to proceed, the trial court had informed the jurors that the parties would have a chance to examine the jury charge "to consider any changes that they feel need to be made to those instructions." Later, during their respective final arguments, both the prosecutor and trial counsel for the appellant recited the Article 38.23(a) application paragraph aloud—verbatim, without correction.[16] The prosecutor ultimately assured the jurors, specifically with respect to the Article 38.23(a) instructions, that, "while they're a little bit convoluted, it says exactly what it should say."[17] This argument would have echoed the trial court's boilerplate jury instruction that "the law of the case you will receive from the Court which is given you herein and you are to be governed thereby." The jurors had every reason to assume that the Article 38.23(a) instruction indeed said "exactly what it should say." The proposition that they nevertheless had the wherewithal (although the plurality calls it "common sense," it might just as plausibly be characterized as fortuitous jury nullification—not common at all, and contrary to our ordinary appellate presumption) to recognize the flaw, know how to correct it, and apply it properly to the facts of this case as thus corrected, strikes me as doubtful at best.

## CONCLUSION

It seems quite evident from a straightforward application of the *Almanza* factors to the particulars of this case that the error in the Article 38.23(a) jury instruction affected the very basis of the case, deprived the appellant of a valuable right, and vitally affected his defensive theory—take your pick. In short, the appellant was indeed deprived of "a fair and impartial trial."[18] I would affirm the judgment of the court of appeals. Because the Court today does not, I respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

I find no reason to disavow *Hutch v. State*, 922 S.W.2d 166 (Tex.Crim.App. 1996). It correctly followed the dictates of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985) (op. on reh'g), which is still the standard for jury-charge error. And this case is very close to being on all fours with *Hutch* and should be resolved in the same way.

*Almanza* says that reviewing courts must consider the charge itself, the state of the evidence, including contested evidence, and the weight of the probative evidence, the arguments of counsel, and

---

**15.** The plurality is plainly mistaken to say that "both parties also argued the correct law very clearly to the jury." Plurality Opinion at 709. What the parties asserted with respect to the *law* suffered from the same flaw that the jury instruction did. Their arguments with respect to how the facts of the case ought to be applied to the law could only have confused any juror who was paying attention.

**16.** To be fair, the prosecutor did not recite the entire application paragraph to the jury, as can been seen from Judge Johnson's dissenting opinion. Dissenting Opinion at 720–21.

But he read a portion of it to the jurors verbatim, and invited them approvingly to "read the rest of it" for themselves.

**17.** The plurality disapproves of *Hutch's* particular reliance upon the principle that the arguments of the parties "cannot substitute for instructions by the court." Plurality Opinion at 707. Because the parties here did not argue the *law* correctly, but instead simply endorsed the incorrect statement of the law contained in the jury charge, this principle does not apply to this case in any event.

**18.** Tex.Code Crim. Proc. art. 36.19.

any other relevant information revealed by the record of the trial as a whole. *Almanza* at 171.

The outcome of this trial on a charge of driving while intoxicated rested to a large degree on what the jury believed about the color of the light over appellant's license plate, and that fact issue was greatly contested. Under a correct statement of the law, if the jury believed that the light was white, it must conclude that the stop was illegal and, as a result, disregard evidence obtained from the stop, that is, all evidence of intoxication. When a factual dispute arises as to whether the evidence was legally obtained, an instruction on the issue is required. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Crim.App.1986).

In this case, defense counsel requested a jury instruction on the 38.23 issue. The prosecution objected to such an instruction, saying,

> Suppression of the evidence—Your, Honor, this issue has already been litigated in a suppression hearing before this trial, which is the proper vehicle for that kind of—that kind of testimony, that kind of evidence.

> A jury instruction on suppression issues at this point would be unnecessary, confusing to the jury. Questions of—what he's asking for is an instruction on facts, not questions of law, which is what the instructions should have. And all the facts that were presented before the jury—testimony, evidence, exhibits—so, you know, we do object to that first instruction of suppressing evidence, whether that issue should be considered by the jury.

> IV R.R. 87–88.

The state's objection appears to be that it does not want the finder of facts, the jury, to find facts.

There is no dispute that the application paragraph of the jury charge in this case stated the law as to the issue of the color of the light in a manner directly opposite to the correct law. So let us look at that error as is dictated by *Almanza.*

Clearly, the charge contained error, an error I consider significant. An error that converts an act from legal to illegal is not a typographical error-a mistake, usually involving misspelling or misplaced punctuation, that is recognizable as an error in any context. The error in this case had the potential to completely alter the deliberations of the jury, not a circumstance to be shrugged off as of no great import. Nor should it be minimized because it occurred in the application paragraph.

An abstract paragraph does not inform the jury of what facts, if found by it, would permit the jury's consideration of the contested evidence. In this case, the abstract "paragraph" of the charge was brief, general, and printed, without a break, in the same physical paragraph as the application "paragraph": "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence and against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that a person detained actually is, has been or soon will be engaged in criminal activity." This occupied ten lines in two paragraphs in the reporter's record, six lines in the same paragraph as the application paragraph in the charge. The situation is further complicated by the judge's reading of the abstract paragraph to the jury: "You are instructed that under our law, no evidence obtained or derived by an officer or other

person as a result of an lawful stop and detention shall be admissible in evidence and against such accused." VI R.R. 99.

In contrast, the application paragraph set out, in specific detail, what was to be considered in determining whether the stop was proper. This took 16 lines in the reporter's record, 9 lines in the charge. The application paragraph took a correct, general statement—"no evidence obtained or derived by an officer or other person as a result of an unlawful stop"—and gave specific details about the circumstances in this case that would constitute an illegal stop—"his vehicle failed to [have] a white light to illuminate the vehicle's license plate...." Because the application paragraph is the portion of the charge that authorizes the jury to act,[1] it is not sufficient that the jury received a correct instruction in the abstract paragraph.[2] "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion."[3]

*Almanza* directs us to consider the state of the evidence, including any contested issues, and the weight of the probative evidence. *Almanza* at 171. We are not restricted to considering only contested issues. The most contested issue was the color of the light, but there was also a contest over the second reason that the officer originally gave for the stop—appellant did not signal a turn when he entered a public road from a private parking lot—and the officer conceded that such a failure to signal was not an offense and could not have formed a valid reason to stop appellant. There were other contested issues: why the officer edited the video and what

he had removed; what appellant's wife said to appellant and to the officer. There was no breath test.

The arguments of counsel are to be considered also. One out of three arguments reiterated the erroneous instruction, another argument told the jurors to read it for themselves, and the third vouched for the accuracy of the instructions.

The lead prosecutor's argument covers thirteen pages in the reporter's record, and his only reference to the application paragraph covers eleven lines. That portion ends with a partial reading of the charge: "'... his vehicle failed to comply with the Texas Transportation Code provision, which requires a white light to illuminate the vehicle's license plate,' and then you can read the rest of it." VI R.R. 114–15. The argument of the second prosecutor covers twelve pages in the reporter's record. In his only mention of the jury charge, which covers two lines, the second prosecutor explicitly vouched for the accuracy of the jury charge: "And these instructions, while they're a little bit convoluted, it says exactly what it should say." VI R.R. 150.

Defense counsel read the entire erroneous portion of the charge. VI R.R. 128. In the middle of defense counsel's closing argument, the lead prosecutor objected that defense counsel was misstating the law. The trial court responded to this objection by saying that "you've been told this throughout the trial—anything the lawyers tell you is not evidence." VI R.R. 126. "[A]rguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky,* 436 U.S. 478, 488–89, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). But

---

1. *Jones v. State,* 815 S.W.2d 667, 669 (Tex. Crim.App.1991).

2. *Williams v. State,* 547 S.W.2d 18, 20 (Tex. Crim.App.1977).

3. *Ibid.*

those arguments can exacerbate an error by repeating it.

The last *Almanza* concern is any other relevant information revealed by the record of the trial as a whole. *Bailey v. State*, 867 S.W.2d 42, 43 (Tex.Crim.App. 1993) (citing *Almanza*). This record does not appear to have "other relevant information" as to the contested issue of the license-plate light.

After considering all of the *Almanza* factors, I would find that the erroneous instruction cannot be deemed harmless. Jurors are presumed to have understood and followed the court's charge, absent evidence to the contrary. *Miles v. State*, 204 S.W.3d 822, 828 (Tex.Crim.App.2006) ("[I]n the absence of evidence to the contrary, we will assume that the jury followed its written instructions.").[4] Many, if not most, jurors are not lawyers prepared to parse every statement in a jury charge. These jurors heard the trial court read them an incorrect instruction on the contested issue of the validity of the traffic stop: "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an lawful stop and detention shall be admissible in evidence and against such accused." The lead prosecutor read part of the erroneous instruction and told them to read the rest of it for themselves, the defense counsel read the entire erroneous instruction, and the second prosecutor vouched for the accuracy of the erroneous instruction. The jury received a written charge that comported with the oral communications of the trial judge, defense counsel,

and both prosecutors. Why would the jury think that the instruction was wrong?

Nor is this a windfall for a defendant. The state is equally responsible for the jury charge's accuracy. It may request instructions that it thinks are appropriate, it may challenge requests from the defense, and may suggest to the trial court that a portion of the charge is in error. Do not the prosecutors, like defense counsel, have a responsibility to object to errors in a jury charge? In this case, the state not only failed to object to the error, it urged the jury to read the erroneous instruction and then vouched for its accuracy: "And these instructions, while they're a little bit convoluted, it says exactly what it should say."

When we consider jury-charge error, we must limit our review to what is in the reporter's record. We should not purport to divine how the jurors might have interpreted the erroneous instruction; we may consider only what is in the reporter's record. I am unpersuaded and made somewhat suspicious by the repeated use of words such as "likely," "most likely," "unlikely," "probable," "almost certainly," "obviously," "obviousness," "may well," and "merely." "Common sense" is not common, and I fear that many prosecutors have stories about juries that seemed devoid of that quality.

I find it very odd indeed that it has been asserted that the bigger the error, the smaller the chance that the error is harmful: "In light of the obviousness of those errors, the common sense of the jurors,

---

4. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim.App.1987), is inapt in this case as it deals with the presumptions in regard to the efficacy of an instruction by the trial court to disregard objectionable testimony. It is not concerned with erroneous jury instructions. "In the vast majority of cases in which argument is made or testimony comes in, deliber-

ately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury." *Id.*

the correct portion of the jury charge, and the correct statements of law in both parties' closing arguments, we believe it probable that the jury resolved the issue in accordance with the law." That is, if the error is "obvious," surely the jury will know that and use the correct law. But the error may be "obvious" only to a lawyer. In the unfamiliar context of a trial, the jurors may be lacking in common sense. And how is the jury to know what the correct law is when the trial judge and all three lawyers in the case told them the same incorrect law? In this case, neither the trial court nor the state corrected the error. Defense counsel seems to have attempted to do so after reading the erroneous jury instruction, but his explanation provoked an objection by the second prosecutor, an objection that indicates that the lead prosecutor had conflated the standard for a valid stop—specific articulable facts—with the standard for a finding by the jury-reasonable doubt.[5]

> [Defense] What is the Court telling you? If you—if you find that he had a white license plate or even if you—all you had was a reasonable doubt whether he had a license plate, then the stop was illegal. You know, you can't even have a reasonable doubt, you absolutely know for a fact—
>
> [State] Your Honor, I object. He's misstating the law. That's not what the instruction says. It's not beyond a reasonable, it's specific articulable facts.
>
> [Defense] I'm telling that if it's beyond reason that it was a white light, but the law says that all you have to have is a reasonable doubt of whether it was or was not.
>
> [State] Your Honor, that's not your instruction.

[The court] All right. "Ladies and gentlemen, just refer to the instructions of the Court." VI R.R. 128–29.

Also odd is an assertion that the error benefits the defendant because the application paragraph told the jury what to do with legally obtained evidence, but did not tell it what to do with illegally obtained evidence. Suppose that one tells a six-year-old child, "I have two ice-cream cones, one is chocolate, the other is vanilla. Would you like to have the vanilla cone?" Even a child of that age knows that there are still two choices: "Yes, I would like the vanilla cone," and "No, I prefer the chocolate cone." Just because the second choice is not specifically articulated does not mean that the choice is not known.

The abstract portion says, "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence and against such accused." This is a correct, general statement of the law. The jury's first ice-cream cone is to find that evidence was obtained in violation of the law and that it must not consider it. The jury's second ice-cream cone is to find that the evidence was not obtained in violation of the law and that it may therefore be considered. Like the six-year-old and the ice-cream cones, the presumably rational adults on the jury knew that there were two choices as to the contested evidence about the color of the license-plate light. Any rational adult knows that not all choices must be articulated in order to be known. Even though, in this case, the abstract and application paragraphs conflict, it seems to me that non-lawyer jurors, when told to obey the instructions given by the trial judge in the written charge, will depend more on the applica-

---

5. The instruction correctly stated the standard: "If you find from the evidence that ... [appellant] ... failed to comply ... or you have a reasonable doubt thereof...."

tion paragraph than on the abstract paragraph because it sets out the issue to be determined in concrete, non-legalese language. That language constituted a substantial error.

Because the error in the charge was articulated at least four times, without correction, I would find that the error resulted in egregious harm and affirm the judgment of the court of appeals.

I respectfully dissent.